## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HOV SERVICES, INC.,** | **Civil Action No.** |
| **Plaintiff,** | |
| **v.** | |
| **COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION,** | **COMPLAINT AND JURY DEMAND** |
| **Defendant.** | |

Plaintiff HOV Services, Inc., a Delaware corporation and parent of Lason India Private Ltd., successor in interest to Vetri Software India Ltd. ("HOV" or "Plaintiff"), an Indian corporation authorized to do business in the State of New Jersey as HOV Services, Inc., f/k/a Lason Systems, Inc., as and for its Complaint against Defendant Cognizant Technology Solutions Corporation ("Defendant" or "CT") states the following:

### NATURE OF THE ACTION

1.     HOV brings this action in response to the persistent efforts by its direct competitor, Defendant CT, to cripple HOV's business on a global scale and to destroy HOV's competitive advantage by, among other things, systematically and wrongfully targeting and luring away in excess of 51 employees from HOV while simultaneously misappropriating and unlawfully using HOV's confidential and proprietary business information.

2.     Upon information and belief, CT has directed its raid and illegal actions to acquire HOV's confidential and proprietary business information from its corporate headquarters in Teaneck, New Jersey, where the proceeds of such activities ultimately flow as well.

3.      CT has conducted its raid through personal off-premise meetings, telephone calls and emails with targeted employees with the design and intent to systematically induce HOV employees to terminate their employment with HOV and thereby cripple, irreparably harm and/or destroy HOV's business.  The HOV employees who defected have/are soliciting other HOV employees in Chennai, India in furtherance of Defendant's scheme.   Indeed, those individuals who conspired with Defendant are attempting to destroy HOV's business including its employee base which HOV has spent an extraordinary amount of time and money training, developing and maintaining only to see them secretly contacted and solicited by Defendant.

4.      Defendant and certain of its agents have also induced current and former HOV employees to provide Defendant, in breach of their common law and contractual duties to HOV, vital confidential and proprietary information concerning 450 employees of HOV including their names, detailed salary and bonus compensation data, working days, per day targets, number of documents produced per month, production efficiencies and various customer project names. This employee information is critical to the success and profitability of HOV in the highly competitive business process outsourcing industry and Defendant misappropriated this confidential and proprietary information for the improper and unlawful purpose of crippling, irreparably harming and/or destroying HOV's business.

5.      Defendants' raid against HOV's operations is ongoing as, upon information and belief, Defendant CT continues to use HOV's confidential information to solicit HOV's employees and damage HOV's business.  Specifically, within the past month Defendant has improperly lured away and hired at least eight (8) more of HOV's employees.  As a direct result, HOV faces the imminent, irreparable crippling of its business, goodwill, reputation and customer relationships.

6.    Accordingly, this is an action seeking injunctive relief and damages arising out of Defendant's unlawful solicitation of HOV's employees for the purpose of disabling direct competition with HOV, conversion of HOV's confidential and proprietary information, tortious interference with HOV's prospective economic advantage and contractual relations with employees and clients, disclosure and use of confidential and proprietary information and the unlawful, willful, wanton and malicious corporate raid of HOV's business operations.

7.    This action also seeks damages arising out of Defendant's wrongful and malicious use of HOV employees to access one or more HOV computers and databases in order to email to Defendant copies of employee lists and other confidential and proprietary information in violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. and the New Jersey Computer Related Offenses Act, N.J.S.A. 2A:38-1, et seq.

## THE PARTIES

8.    HOV is a Delaware corporation and parent of Lason India Private Ltd., successor in interest to Vetri Software India Ltd., an Indian corporation authorized to do business in the State of New Jersey as HOV, f/k/a Lason Systems, Inc.  HOV maintains offices around the world, including in North America.

9.    Upon information and belief, Defendant CT is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 500 Frank W. Burr Boulevard, Suite 50, Teaneck, New Jersey 07666.

10.    Although not a named defendant herein, Arun S.P. ("Arun") is a former member of HOV's management group in Chennai, India and played an integral part in Defendant's scheme to solicit HOV's employees away from HOV to Defendant, its competitor, with the sole

intention of causing an adverse impact on HOV.  Arun had been employed with HOV for approximately six years and most recently as Deputy Senior Manager.

11.     Upon information and belief, Arun is currently employed by Defendant CT.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because of the claim asserted herein arising under the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq.

13.     This Court can also exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) insofar as HOV's state law claims derive from a common nucleus of operative facts as its federal law claims and form part of the same case or controversy.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendant resides in and operates from its principal place of business in the State of New Jersey.

## FACTS COMMON TO ALL COUNTS

A.     THE BUSINESS PROCESS OUTSOURCING INDUSTRY

15.     Business process outsourcing involves the contracting of the operations and responsibilities of specific business functions or processes to a third-party service provider, which in many instances is located outside the country where the contracting company is headquartered.

16.     Worldwide, business process outsourcing is a highly competitive, multi-billion dollar industry.

17.     In so far as business process outsourcing is a service based industry, the two most critical assets of any outsourcing company are its client relationships and its employees.

18.     HOV is a business process outsourcing company that offers transaction management (e.g., accounts payable, accounts receivable management, payer/provider healthcare services), risk management (e.g., employee screening, construction services, collection management) and content management (e.g., document management) services to companies worldwide across key verticals such as financial, telecommunications, healthcare, insurance, construction, publishing, accounting and government.

19.     Defendant CT is a direct competitor of HOV providing similar global business process outsourcing services across various industries all over the world including banking and finance, communications and technology, energy and utilities, insurance, life sciences and manufacturing.

**B.     DEFENDANT'S UNLAWFUL RAID OF HOV'S EMPLOYEES**

20.     Beginning in our about 2007, Defendant has instituted a clandestine operation to raid HOV's employee base in an effort to cripple HOV's status as a direct competitor and unfairly compete with HOV for the same client contracts.

21.     Upon information and belief, Defendant set its covert actions into motion by approaching Arun S.P. ("Arun"), a former member of HOV's management group in Chennai, India.

22.     As a member of HOV's Management Group, Arun had access to and utilized HOV's proprietary and confidential information, including its database of customers and identified prospects, customer contact information, specific transaction details, pricing information as well as detailed, client-specific personnel information.

23.     To protect HOV's confidential business information, HOV required Arun, as a condition of his continued employment, to sign a Non-Disclosure, Proprietary and Confidential

Information and Inventions Policy ("NDA"), dated January 30, 2003.  A true and complete copy of Arun's NDA is attached hereto as Exhibit A.

24.     In his NDA, Arun agreed to certain post-employment covenants which prohibited him from disclosing HOV's confidential information, interfering with the business of HOV and interfering with or recruiting HOV employees or agents.

25.     After Arun terminated his employment with HOV in 2007 and joined Defendant, he immediately began a persistent and systematic effort to lure away HOV employees from its Chennai, India headquarters.

26.     Through Arun, Defendant approached other HOV employees with offers of employment to poach them away from HOV and offer them jobs with Defendant's Chennai, India office.  Defendant orchestrated these efforts in order to cripple HOV's business on a global scale and to destroy HOV's competitive advantage by systematically and wrongfully targeting and luring away key employees from HOV.

27.     By December 2008, Defendant, with Arun's assistance and cooperation, had successfully targeted and hired approximately 17 senior-level employees from HOV - many of whom had also executed NDAs with HOV.

28.     In 2009, the execution of the raid continued as Defendant lured away an additional 21 employees from HOV, including both senior-level and support employees.

29.     As a result of Defendant's persistent and systematic raids, HOV sent a letter to Defendant's human resource center, located in Chennai, India, on August 19, 2009, notifying Defendant that certain former HOV employees (and currently employed with Defendant) had been contacting HOV's current employees to lure them away from HOV to join Defendant. HOV's letter further instructed that HOV had previously contacted and addressed with

Defendant its employee poaching practices and advised, at that time and again therein, that such activity was an unethical business practice.

30.    Ignoring the directive in HOV's August 19, 2009 letter, upon and information and belief, Arun and other former HOV employees at the direction of Defendant continued to contact current HOV employees to induce them to join Defendant.

## C.    DEFENDANT INTENSIFIES ITS ATTACK AND UNLAWFULLY OBTAINS HOV'S CONFIDENTIAL AND PROPRIETARY INFORMATION

31.    In June 2010, Defendant CT intensified its clandestine attacks on HOV and unlawfully obtained HOV's confidential and proprietary information.

32.    Specifically, in or about June 2010, Defendant induced and directed then-current HOV employees to transfer, through HOV's email system, to Defendant vital confidential and proprietary information concerning 450 HOV employees including their names, detailed salary and bonus compensation data, working days, per day targets, number of documents produced per month, production efficiencies and various customer project names (the "HOV Employee Data").

33.    The HOV Employee Data is maintained exclusively on HOV's computer systems and is not readily accessible by other parties, nor can it be obtained from other sources or duplicated.

34.    The HOV Employee Data is essential to the operation of HOV's business and constitutes valuable trade secrets and confidential and proprietary information acquired by HOV at great time, effort and expense.

35.    HOV's analysis and review of the integrity of its computer systems is ongoing and HOV is uncertain at this time if Defendant has also unlawfully obtained other confidential and proprietary information in addition to the HOV Employee Data.

36.     Evidence of Defendant's computer raid and misappropriation of the HOV Employee Data was so evident that certain former HOV employees confessed to sending HOV's confidential and proprietary information to Defendant and, as a result, their HOV employment was terminated.

37.     By these acts, Defendant wrongfully and maliciously obtained the HOV Employee Date for the improper and unlawful purpose of continuing its efforts to target and lure away select HOV employees who were extensively trained by HOV, at considerable time, effort and expense.

38.     Through November 2010, and acting through Arun and other former HOV employees, Defendant has approached and successfully lured away 43 employees, most of whom were senior-level employees, from HOV's Chennai, India headquarters.

39.     Defendant's raid against HOV is ongoing and Defendant continues to unlawfully possess HOV's confidential and proprietary information.

40.     Specifically, as a result of the foregoing, on November 16, 2010, counsel for HOV sent a letter to Gordon Coburn, the Chief Financial Officer for CT, located in Teaneck, New Jersey, requesting, inter alia, that CT cease its unlawful raid against HOV and purge its database (corporate and personal) of HOV's confidential information.  A copy of the aforesaid letter is attached hereto as Exhibit B.

41.     Notwithstanding HOV's written and verbal requests to date, CT has not confirmed (a) that it has purged its corporate (or the offending CT employees' personal) databases of HOV's confidential data; or (b) that CT's agents and employees have been instructed to cease using HOV's confidential data to compete unlawfully with HOV including the unlawful solicitation of HOV's employees.

42.     In fact, during the week of January 3, 2011, CT hired at least eight (8) more HOV employees immediately after each employee completed training provided by HOV, at HOV's considerable time, effort and expense.

### FIRST CAUSE OF ACTION
**(Violation of Federal Computer Fraud and Abuse Act)**
*18 U.S.C. § 1030, et seq.*

43.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 42 of the Complaint as if set forth herein.

44.     HOV's computers on which the HOV Employee Data is maintained are used in both interstate and foreign commerce and therefore are protected as defined by 18 U.S.C. § 1030, et seq.

45.     Defendant directed and induced HOV employees to access one or more protected computers in violation of 18 U.S.C. § 1030, et seq. and, as a result, Defendant obtained confidential and proprietary information belonging to HOV without authorization and by exceeding the authorization that HOV granted to their employees for the purpose of causing harm to HOV.

46.     Defendant took such actions knowingly and with the intent to recklessly cause damage to HOV and for the sole purpose of obtaining a commercial advantage and/or financial gain.

47.     As a direct and proximate result of Defendant's aforesaid conduct, HOV has sustained damage or loss of not less than $5,000.00, within the meaning of 18 U.S.C. § 1030.

48.     As a direct and proximate result of Defendant's conduct, Defendant intended to wrongfully obtain, and in fact, did obtain something of value that belonged to HOV and that has value well in excess of $5,000.00.

49.     As a further direct and proximate result of Defendant's aforesaid conduct, HOV has suffered and will continue to suffer substantial additional losses well in excess of $5,000.00, including but not limited to losses sustained in responding to Defendant's actions, investigating Defendant's actions and taking remedial steps to prevent Defendant's further offenses.

50.     Defendant's misappropriation of HOV's valuable trade secrets and confidential and proprietary information and continued unfair competition has caused HOV damages in an amount which may not be determinable, and as a result HOV has suffered and continues to suffer irreparable harm in the loss of employees and damage to its business.

51.     To the extent that damages resulting from Defendant's misappropriation of HOV's valuable trade secrets and confidential and proprietary information and continued unfair competition are calculable, HOV seeks an award of such damages in an amount to be determined by the Court.

**SECOND CAUSE OF ACTION**
**(Violation of New Jersey Computer Related Offenses Act)**
***N.J.S.A. 2A:38-1, et seq.***

52.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 51 of the Complaint as if set forth herein.

53.     HOV is an "enterprise" as that term is used within the New Jersey Computer Related Offenses Act, N.J.S.A. 2A:38-1, et seq. ("the Act").

54.     Defendant is an "actor" as that term is used within the Act.

55.     In violation of the Act, Defendant purposely or knowingly, and without authorization, accessed HOV's computers without authorization, took all or a portion of HOV's confidential and proprietary information, as more fully alleged above, and used the HOV data to obtain a competitive advantage and compete unfairly with HOV.

56.     These violations of the Act have caused monetary and non-monetary harm to HOV.

57.     Defendant's misappropriation of HOV's valuable trade secrets and confidential and proprietary information and continued unfair competition has caused HOV damages in an amount which may not be determinable, and as a result HOV has suffered and continues to suffer irreparable harm in the loss of employees and damage to its business.

58.     Accordingly, HOV is entitled to injunctive relief pursuant to Section 5 of the Act.

59.     To the extent that damages resulting from Defendant's misappropriation of HOV's valuable trade secrets and confidential and proprietary information and continued unfair competition are calculable, HOV seeks an award of such damages in an amount to be determined by the Court.

### THIRD CAUSE OF ACTION
### (Unfair Competition)

60.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 59 of the Complaint as if set forth herein.

61.     Defendant employed unlawful means to lure away HOV employees and used former senior-level and current HOV employees to assist Defendant CT in carrying out its unlawful corporate raid of HOV and illegal procurement of HOV's valuable trade secrets and confidential and proprietary information.

62.     During their employment with HOV, HOV employees had access to vast amounts of proprietary and confidential information belonging exclusively to HOV, which information included valuable human resource information relating to confidential employee names, detailed salary and bonus compensation, working days, per day targets, number of documents produced per month, production efficiencies and various customer project names.

63.     That proprietary and confidential information was not known outside of HOV. Such information is of great value to HOV and would be of great value to HOV's competitors. HOV went to great measures to protect that information.

64.      In order to protect its confidential and proprietary interests, HOV employees with access to HOV's confidential information, including Arun, are required to execute NDAs which contain: (i) an express prohibition on the use or disclosure of any confidential or proprietary information either while employed or at any time thereafter; (ii) obligations of faithful and loyal service; and (iii) post-termination restrictive covenants (typically including a blanket prohibition on disclosing HOV's confidential information).

65.     At Defendant's request and direction, HOV employees misappropriated and exploited HOV's confidential and proprietary information by sharing it with Defendant to assist in its unlawful scheme to raid and destroy HOV's business.  Defendant knowingly obtained confidential and proprietary information with the intent to harm HOV by stealing its employees.

66.     Defendant's wrongful and fraudulent use of HOV's confidential and proprietary information constitutes unfair competition, which has damaged and continues to damage HOV.

67.     Defendant's unfair competition is ongoing and, unless enjoined, Defendant will continue to cause irreparable harm and injury for which HOV may have no adequate remedy at law.

68.     To the extent that damages resulting from Defendant's continued unfair competition are calculable, HOV seeks an award of such damages in an amount to be determined by the Court.

## FOURTH CAUSE OF ACTION
### (Misappropriation and Misuse of Confidential & Proprietary Business Information)

69.     HOV incorporates each and every allegation contained in Paragraphs 1 through 68 hereof as though fully set forth at length herein.

70.     Defendant possesses confidential information that belongs exclusively to HOV and which is crucial to the successful operation of HOV's business including, but not limited to, proprietary information relating to employee names, detailed salary and bonus compensation, working days, per day targets, number of documents produced per month, production efficiencies and various customer project names – the HOV Employee Data.

71.     Defendant obtained HOV's confidential information through its improper solicitation of HOV's employees including inducing then-current HOV employees to transfer, through email, to Defendant vital confidential and proprietary information concerning 450 HOV employees including their names, detailed salary and bonus compensation data, working days, per day targets, number of documents produced per month, production efficiencies and various customer project names.

72.     Upon information and belief, Defendant misappropriated HOV's confidential and proprietary information by providing economic incentives and rewards to certain HOV employees to breach their common law and contractual duties to HOV.

73.     Defendant's misappropriation of HOV's trade secrets and confidential and proprietary information is ongoing and, unless enjoined, Defendant will continue to cause irreparable harm and injury for which HOV may have no adequate remedy at law.

74.     To the extent that damages resulting from Defendant's misappropriation of HOV's valuable trade secrets and confidential and proprietary information and continued unfair

competition are calculable, HOV seeks an award of such damages in an amount to be determined by the Court.

## FIFTH CAUSE OF ACTION
### (Conversion)

75.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 74 of the Complaint as if set forth herein.

76.     Defendant has wrongfully retained and used for its own purpose HOV's confidential and proprietary business information without the consent of HOV.

77.     Said conversion by Defendant was committed maliciously and for the sole purpose of inflicting harm on its competitor, HOV, and/or to benefit itself at the expense of HOV.

78.     As a direct and proximate result of Defendant's conversion of its confidential and proprietary business information, HOV has suffered damages.

## SIXTH CAUSE OF ACTION
### (Tortious Interference)

79.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 78 of the Complaint as if set forth herein.

80.     Defendant has intentionally, maliciously and with blatant disregard for the rights of HOV, encouraged and solicited the services of HOV's current and former employees and others so that they would reveal the confidential, proprietary and other business information that was obtained by them during their relationship with HOV and assist in Defendant's business endeavors by unfairly and unlawfully competing with HOV.

81.     Additionally, Defendant has knowingly and intentionally interfered with the contractual relationships between HOV and its employees.  This interference has included, but is

not limited to, soliciting and inducing HOV's employees to wrongfully and maliciously obtain the HOV Employee Date for the improper and unlawful purpose of continuing its efforts to target and lure away select HOV employees who were extensively trained by HOV, at considerable time effort and expense.

82.     By reason of the foregoing, Defendant has tortiously interfered with the contractual relationships of HOV and the prospective economic advantage HOV would have derived from those relationships.

83.     As a direct and proximate result of Defendant's tortuous interference with the contractual relationships of HOV and the prospective economic advantage HOV would have derived from those relationships, HOV has suffered damages.

**SEVENTH CAUSE OF ACTION**
**(Raiding)**

84.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 83 of the Complaint as if set forth herein.

85.     Defendant has targeted HOV for the raiding and pirating of its employees and, upon information and belief, has plans to engage in a further campaign against HOV using the wrongful and improper conduct described above in order to recruit a large number of HOV's workforce from HOV over to Defendant for the improper purpose of injuring HOV and/or to benefit Defendant at the expense of HOV.

86.     Defendant was at all times aware that its use of current HOV employees in its raids was improper and would cause them to breach a number of legal duties (both common law duties and contractual obligations) owed to HOV.

87.     Defendant's conduct amounted to an unlawful corporate raid of HOV's business operations and its actions were willful, wanton and malicious.  Defendant's unlawful actions

were intended to cripple and perhaps destroy the competitive advantage of HOV – a direct competitor in the business process outsourcing industry.

88.     Defendant's raiding activities are ongoing and, unless enjoined, Defendant will continue to cause irreparable harm and injury for which HOV may have no adequate remedy at law.

89.     To the extent that damages resulting from Defendant's unlawful raiding are calculable, HOV seeks an award of such damages in an amount to be determined by the Court.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, HOV Services, Inc., parent of Lason India Private Ltd., successor in interest to Vetri Software India Ltd., hereby demands judgment against Cognizant Technology Solutions Corporation for:

A.     The issuance of an Order enjoining Cognizant Technology Solutions Corporation as well as all persons and entities acting in concert or participation with it, from engaging in the systematic poaching of employees and misappropriation of HOV's confidential and proprietary information and commanding it to return any and all databases, documents or lists in its possession or control that contain confidential and proprietary business information concerning the activities, personnel or affairs of HOV Services, Inc. and, its wholly owned subsidiary, Lason India Private Ltd.;

B.     An award of damages, in an amount to be determined at trial, incurred by HOV Services, Inc. as a result of Cognizant Technology Solutions Corporation's unlawful actions;

C.     Punitive damages against Cognizant Technology Solutions Corporation for its willful and malicious conduct;

D.      An accounting and disgorgement of any profits earned by Cognizant Technology Solutions Corporation as a result of its unlawful actions;

E.      All costs and disbursements, including reasonable attorneys' fees and expenses, prejudgment interest and all other sums provided for under the law; and

F.      Such other and further relief as this Court may deem just and proper.


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Civil Rule 38.1, Plaintiff HOV Services, Inc., parent of Lason India Private Ltd., successor in interest to Vetri Software India Ltd., hereby demands a trial by jury upon each of the causes of action so triable.


Respectfully submitted,


/s/ John P. Leonard_____
John P. Leonard, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Ave.
P.O. Box 2075
Morristown, New Jersey 07962-2075
Tel: (973) 993-8100
Fax: (973) 425-0161
Email: Jleonard@mdmc-law.com


Date:  January 28, 2011

# EXHIBIT A



100 Rs.

**INDIA NON JUDICIAL**

₹ 100

भारत

**एक सौ रुपये   ONE HUNDRED RUPEES**

VETRI SOFTWARE INDIA LIMITED

7, Kodambakkam High Road,
CHENNAI - 600 034.

P. Saraswathi
STAMP VENDOR
L.C. No. 22515/79
Mount Road, Chennai-6

## NON-DISCLOSURE, PROPRIETARY AND CONFIDENTIAL INFORMATION AND INVENTIONS POLICY
### OF
### VETRI SOFTWARE INDIA LIMITED

### UNDERTAKING AND AFFIDAVIT BY EMPLOYEE

I, Arun S P son of Shri Kalyanasundaram S P residing at Valasaravakkam, an employee of M/s. Vetri Software India Limited, do hereby solemnly affirm that

1. I have read and understand all the provisions of the enclosed Non-Disclosure proprietary and confidential information and invention policy (POLICY) of the Company.

2. I hereby assure and undertake to fully abide by and adhere to the each and every terms and conditions of the said Policy.

   I am fully aware and have full knowledge that my agreeing to abide by and adhere to the terms and conditions of the said Policy also creates important obligations of Trust and affects my rights to inventions which I made / make during my employment with the Company. However, I fully confirm and agree that I shall have no right, claim, cause of action against the Company for such inventions and discovery, etc., which shall belong to the Company for all times to come.

   I shall not in any manner disclose or use or misuse any of the confidential information or proprietary information of the Company in violation of the various terms and conditions and stipulations of the said policy.

5. I further confirm that the said policy which I have agreed to abide by represents and constitutes the complete understanding between the Company and me on the said matter and it supercedes all prior representations and understandings whether oral or written between me and the Company in this regard, if any

SOLEMNLY AFFIRM ON THIS ___ DAY OF _____ 2003.

S. DEVANATHAN, B.A., B.L.,
ADVOCATE & NOTARY
...
Before me

Signature of the Employee

<u>VETRI SOFTWARE INDIA LIMITED</u>

NON-DISCLOSURE, PROPRIETARY AND CONFIDENTIAL INFORMATION AND
INVENTIONS POLICY

1.    Purpose:

Vetri Software India Limited (Company) operates in a worldwide competitive
environment and   in order to succeed in such competitive environment and to
enhance its opportunities in the business field, the Company has to establish and
adhere to certain policies and procedures in respect of its confidential information
and intellectual properties.   The Company possesses various confidential and
proprietary information and intellectual properties and would continue to develop and
acquire such confidential information, proprietary information and intellectual
properties either on its own or through its various associates, employees and
independent contractors. Besides, the employees of the Company, in course of their
employment with the Company and by virtue of various facilities, trainings and
techniques provided to them by the Company may make various developments or
inventions on which the Company should have absolute and unfettered right and full
ownership. In addition, disclosure of any confidential and proprietary information of
the Company or any unauthorized use or misuse of the same would put the
Company to irreparable loss and hardship.  Similarly, any unauthorized disclosure,
use or misuse or infringement or violation of any of the intellectual properties of the
Company whether registered / patented or not would entail huge losses to the
Company.  The Company therefore has paramount interest in comprehensively
protecting the confidential and proprietary information and the intellectual property
rights.   Every employee of the Company therefore should fully and clearly
understand the importance of such confidential and proprietary information and
intellectual properties of the Company and during their tenure of services with the
Company and one year after the date of which he/she ceases to be an employee,
shall fully protect and commit to the Non-disclosure and non-use of such confidential
and proprietary information of the Company and its intellectual properties including
various rights attached to such intellectual properties.

2.    Confidential Information

Confidential Information shall mean all confidential and proprietary information
or material in any form whether physical or electronic, and shall include:

    a. Production processes, marketing techniques and arrangements, mailing
       lists, financial information, customer names and addresses, prospects,
       names and/or information relating to Company's business and activities
       and the manner in which Company does business or production or
       development or any information derived there-from;

    b. Software including source and object code, flow chart, algorithms,
       coding sheets, routines, sub-routines, compilers, assemblers, diagrams,
       sketches, design concepts and related documentation and manuals;



c. All other materials or information related to the business or activities or Company, which are not generally known to others engaged in similar businesses or activities.

d. All information and details pertaining to various Independent Contractors associated with the Company and the works that such Independent Contractors do for the Company or services that such Independent contractors render to the Company including terms and conditions thereon.

The lack or absence of any marking or statement that particular information is Confidential Information shall not affect its status as Confidential Information.

Confidential Information shall not include:

i) Information available in the public domain not as a result of breach of any duty owed to Company by the employee or any other person;

ii) Information already lawfully known to the employee without any non-disclosure obligation, prior to the date of his/her employment;

iii) Information published or disseminated by Company without any restrictions to persons, and

iv) Information identified in writing by Company as not being Confidential Information.

3.  Proprietary Information:

"Proprietary Information" means and includes all information that can be protected as a trade secret under applicable law, or that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. Without limiting the generality of the foregoing, examples of such Proprietary Information include computer programs, databases, algorithms, know-how, improvements, discoveries, inventions, methods, techniques, strategies, new products, unpublished financial statements, budgets, projections, billing practices, pricing data, contacts, client and supplier lists, list of independent contractors and business and marketing records, working papers, files, systems, plans and data.

4.  Intellectual Properties:

"Intellectual Property" means and includes, with respect to any Development, all relevant patents, patent applications, copyrights, trade secrets and other rights and protections arising under patent, copyright or similar statutes, whether such intellectual properties are duly registered or not.

5.  Development

"Development" includes, but is not limited to, all inventions, discoveries, improvements, processes, developments, designs, know-how, data, computer

programs, algorithms, formulae and works of authorship, whether or not patentable or registrable under patent, copyright or similar statutes, developed in connection with Vetri's business.

6.   Develop

"Develop" means to conceive, create, develop, assemble, reduce to practice, or, in the case of works of authorship, to fix in a tangible medium of expression.

7.   Agreement, undertaking and commitment of every employee working with Vetri.

(a) As consideration for continuing employment in any capacity with M/s Vetri Software (India) Limited (which together with any related business entity is called the 'Company') and as consideration for the Salary paid for the services during the employment including various trainings provided and facilities, infrastructure, etc., made available every employee will sign a Non-disclosure undertaking and thereby commit themselves fully to this Non-disclosure policy of the Company.

(b) Employee shall promptly inform the Company of the full details of all the developments of any nature that they make or develop whether patentable or not including, but not limited to:

    a.  Developments pertaining to hardware and apparatus, processes and methods, formulae, computer programs and techniques, as well as any improvement and related knowledge, which the employee conceive, complete or reduce to practice (whether alone or jointly with others) while employed by the Company and

        i.  which relate to the present or prospective business, work or investigation of the Company or

        ii.  which result from any work using any equipment, facilities, infrastructure, materials or personnel of the Company or

        iii.  which result from or are suggested by or derived from any work which employee may do for the Company.

(c) Employee shall assign, irrevocably, to the Company or the Company's nominee, his/her entire right, title and interest in:

    i.  all Developments

    ii.  all trademarks, copyrights and mask work rights in Developments and

    iii.  all patent application filled and patents granted on any Development, including those in foreign countries.

Which he/she conceives or make whether alone or with others while employed by the Company or after the end of his/her employment (if conceived as a result of his/her employment).

(d) Both while employed by the Company and afterwards employee shall execute any papers that the Company may consider necessary or helpful to obtain or maintain patents, whether during the prosecution of patent applications or during the conduct of interference, litigation or other matter.

(e) Employee shall not except what is required by him for discharge of his duties towards the Company use or transfer or disclose directly or indirectly any of the Company's Confidential Information (whether or not conceived, originated, discovered or developed by the employee) in any manner, unless the Company consents in writing. Employee shall fully understand that he/she has the obligation and the said obligation remains with him/her even after the employment with the Company ends.

(f) Employee shall deliver to the Company, on the date of his/her employment ends (or promptly upon request) all documents and things in his/her possession pertaining to the business of the Company, including, but not limited to, all Confidential and proprietary information without keeping any copy, replica, duplicate, etc., in any manner.  If documents and things pertaining to the business of the Company or originating with the Company come into his/her possession after the employment ends, Employee will promptly deliver them too to the Company.

(g) Employee shall not during the term of employment with Company, engage himself/ herself in any other employment, occupation, consulting or other business activity directly related to the business in which Company is now involved or becomes involved during the term of employment, nor shall engage in any other activities that may conflict his / her obligations towards Company, in any manner.

(h) Employee shall not accept employment from Company's Client(s) or any person where said employment opportunity was derived from his/her association with the Company, without prior written approval of Company. The employee shall not derive or obtain any benefits on such clients in any manner.

(i) Company's rights and obligations under this Policy shall not be changed, modified, released, discharged, abandoned or otherwise terminated in a whole or in part, excepts in writing, signed by an authorized Executive of the Company.

(j) Governing Law: The terms and conditions of this policy shall at all times and in all respects be governed by the laws of the Government of India.

(k) The headings and other captions in this policy are for convenience and reference only and may not be used in  interpreting, construing or enforcing any  of  the Provisions of this policy.

(i) *Important*

a. As a condition of his/her employment with the Company each and every employee has to strictly adhere and follow the Non-disclosure, Proprietary, Confidential information and invention policy. In case of any violation of any of the stipulations of the policy would require the erring employee to pay adequate damages apart from the Company's unfettered right to terminate their employment and also without prejudice to Company's other legal rights which it may pursue in this regard.

b. Considering the special, unique and unusual nature of the confidentiality and proprietary information of the Company, and its paramount interest in all Intellectual properties, any breach or violation in this regard would put the Company to irreparable loss and damage and monetary damages alone would not be adequate and therefore the Company shall be fully liable to seek any injunctive relief or equitable relief including specific performance from the erring employees in this regard.

c. This policy creates important obligations of Trust. Besides, employees are responsible to assign and confer to the Company all Intellectual properties that they develop during the employment with the Company or because of the employment with the Company.

d. The Company reserves its unfettered right to change, modify, alter or revise this policy its sole discretion. However, any such changes, etc., if made by the Company, would be duly brought to the notice of all the employees who had already subscribed to this policy.

e. Any dispute arising between the employee (s) and the Company in respect of this policy or in any manner touching upon it or connected to it in any manner shall be settled by Arbitration under the Indian Arbitration and Conciliation Act, 1996 by the sole Arbitrator to be appointed by the Company. The venue of arbitration is at Chennai and the said Arbitration award shall be fully binding on the parties concerned. Courts at Chennai alone shall have exclusive jurisdiction.

f. Every employee of the Company must read and fully understand this policy of the Company before subscribing and agreeing to the same.

# EXHIBIT B

# MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

### ATTORNEYS AT LAW

1300 MOUNT KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NEW JERSEY 07962-2075
(973) 993-8100
FACSIMILE (973) 425-0161

J. MICHAEL RIORDAN
Direct dial:  (973) 425-8676
jmriordan@mdmc-law.com

November 16, 2010

**VIA FEDERAL EXPRESS**

Gordon Coburn, Chief Financial Officer
Cognizant Technology Solutions
500 Frank W. Burr Blvd.
Teaneck, NJ 07666

RE:    **Improper and Unlawful Actions by Cognizant Technology Solutions**

Dear Mr. Coburn:

Our firm represents HOV Services, Inc., parent and assignee of Lason India Private Ltd. ("HOVS").  The purpose of this letter is to inform you of HOVS' grave concerns about what HOVS believes is ongoing unlawful conduct by Cognizant to misappropriate and misuse HOVS' confidential and proprietary information (including HOVS' payroll and other proprietary data) wrongfully obtained by Cognizant in order to engage in an ongoing unlawful raid of HOVS' employees and, upon information and belief, to otherwise engage in unlawful competition with HOVS.  On behalf of HOVS, we request you confirm immediately that Cognizant and its agents will cease and desist the foregoing unlawful actions and any other unfair competition with HOVS.

I direct this letter to you as a senior officer of Cognizant and because I am unaware of any counsel for Cognizant.  If Cognizant is represented by counsel, please forward this letter to counsel.

As you may be aware, approximately 43 of HOVS' employees have been induced unlawfully to join Cognizant since October of 2007, including 17 senior-level employees.  Each of these employees executed a Non-Disclosure, Proprietary and Confidential Information and Inventions Policy ("NDA") with HOVS.  Pursuant to the NDA, and in accordance with applicable law, these employees were and are under an obligation (a) not to disclose HOVS' confidential and proprietary information to any other party; (b) not to use HOVS' confidential and proprietary information for any reason other than to discharge their duties to HOVS; (c) to return all HOVS property, including confidential and proprietary information, at the termination

NEW YORK          PENNSYLVANIA          NEW JERSEY          COLORADO

# McElroy, Deutsch, Mulvaney & Carpenter, LLP

November 16, 2010
Page 2

of their employment; (d) to promptly return any HOVS property that comes into their possession after termination; and (e) for one year after employment, not to solicit and/or interfere with the duties of current HOVS employees.

Notwithstanding these employees' freely bargained for obligations, as well as such other duties required or implied by law, HOVS believes that many (if not most) of the former HOVS employees hired by Cognizant were improperly solicited by one or more former HOVS employees who were employed by Cognizant at the time of such solicitation, and during which time those former employees were under contractual and common law duties to refrain from using HOVS' confidential and proprietary information. Further, HOVS believes that Cognizant employees improperly took possession of HOVS' confidential and proprietary information and disclosed and/or used that information to HOVS' disadvantage. HOVS also has evidence that its proprietary and confidential information was disclosed to and/or used by Cognizant employees to raid HOVS' employees and believes that such improper disclosure and use is ongoing

In light of the foregoing, HOVS hereby demands that Cognizant immediately take the following actions:

- **Return HOVS' confidential and proprietary information, including, but not limited to, information relating to HOVS' current and former employees, client and customer information, and business process information;**

- **Remove HOVS' confidential and proprietary information from Cognizant's files, computers, servers and other systems;**

- **Refrain from further inducing current or former HOVS employees from breaching their express or implied non-disclosure and confidentiality obligations owed to HOVS;**

- **Refrain from further aiding and abetting in current or former HOVS employees' breaches of obligations owed to HOVS;**

- **Refrain from performing, encouraging, assisting and/or condoning further acts of tortious interference and unfair competition against HOVS; and**

- **Immediately cease Cognizant's efforts to raid HOVS' employees.**

- **Any other steps necessary to effect a cessation of Cognizant's unlawful competition with HOV.**

This letter does not purport to contain all such illegal and improper acts taken and/or encouraged by Cognizant to the detriment of HOVS' legally protectable interests, and is sent

1515336

# MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

November 16, 2010
Page 3

without waiver of, or prejudice to, all of HOVS' rights, at law or in equity, all of which are hereby expressly retained.

This is not the first time it has been necessary for HOVS to contact Cognizant with regard to Cognizant's unfair and wrongful actions. If Cognizant does not take the foregoing actions and provide written confirmation thereof to me within 7 days of the date of this letter, HOVS will consider all necessary and appropriate steps to protect its interests, including filing a Complaint in similar form and substance to that which is attached as Exhibit A.

Please contact me if you have any questions concerning the foregoing.

Very truly yours,

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

J. Michael Riordan

JMR/lbm
Attachment

1515336