IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOV SERVICES, INC., | Civil Action No.: 11-cv-522 (CCC-JAD) |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, | |
| Defendant. | |

This matter comes before the Court on Defendant Cognizant Technology Solutions Corporation's ("Defendant") motion to dismiss Plaintiff HOV Services, Inc.'s ("Plaintiff") Complaint pursuant to FED. R. CIV. P. 12(b)(1) and (6). For the reasons set forth below, the undersigned respectfully recommends that the Court deny without prejudice Defendant's motion to dismiss.

I.   **BACKGROUND**[1]

Plaintiff, a Delaware corporation, brings this action against Defendant, a Delaware Corporation with its principal place of business in Teaneck, New Jersey, under the Federal Computer Fraud and Abuse Act, 18 U.S.C § 1030, *et seq.*, and the New Jersey Computer Related Offenses Act, N.J.S.A: 2A:38-1, *et seq.* for wrongfully targeting and luring away over fifty-one (51) employees of Plaintiff and misappropriating and unlawfully using Plaintiff's confidential and proprietary business information. Plaintiff asserts the following causes of action against Defendant: Violation of Federal Computer Fraud and Abuse Act (First Cause of Action);

---

[1] The facts are taken from the Complaint.

1

Violation of New Jersey Computer Related Offenses Act (Second Cause of Action); Unfair Competition (Third Cause of Action); Misappropriation and Misuse of Confidential and Proprietary Information (Fourth Cause of Action); Conversion (Fifth Cause of Action); Tortious Interference (Sixth Cause of Action); and Raiding (Seventh Cause of Action).

Plaintiff is a business process outsourcing company that offers transaction management, risk management, and content management services to companies worldwide. (Compl., ¶ 8, ECF No. 1). Plaintiff is the parent of Lason India Private Ltd., successor in interest to Vetri Software India Ltd., an Indian corporation authorized to do business in New Jersey as HOV, f/k/a Lason Systems, Inc. ("Lason"). *Id.* at ¶ 8. Defendant is a direct competitor of HOV providing similar global business process outsourcing services across various industries throughout the world. *Id.* at ¶ 19.

Plaintiff alleges that in or about 2007, Defendant began a clandestine operation to raid Plaintiff's employee base in order to injure Plaintiff's status as a direct competitor and unfairly compete with Plaintiff for the same client contracts. *Id.* at ¶¶ 20, 21. As part of this operation, Defendant approached Arun S.P. ("Arun"), who was at the time a member of Plaintiff's management group in Chennai, India, and convinced Arun to terminate his employment with Plaintiff and begin working for Defendant. *Id.* at ¶ 25. As a member of Plaintiff's management group, Arun had access to Plaintiff's proprietary and confidential information, including databases of customers and identified prospects, customer contact information, specific transaction details, pricing information and detailed, client-specific personnel information. *Id.* at ¶ 22. After Arun began working for Defendant, Defendant, through Arun and using Plaintiff's proprietary and confidential information, began to target and lure away from Plaintiff numerous

senior-level and support employees. *Id.* at ¶ 26. By 2009, Defendant had lured away approximately thirty-eight employees from Plaintiff. *Id.* at ¶¶ 27, 28.

On August 19, 2009, Plaintiff sent a letter to Defendant's human resource center in Chennai, India notifying Defendant that certain former Plaintiff employees (who were current Defendant employees) had been contacting Plaintiff employees in an effort to lure them from Plaintiff. *Id.* at ¶ 29. Plaintiff further alleges that notwithstanding this letter, in 2010, Defendant induced and directed then-current Plaintiff employees to transfer via Plaintiff's email system to Defendant confidential and proprietary information of Plaintiff regarding Plaintiff's employees that was stored on Plaintiff's computers. *Id.* at ¶¶ 31-33. Using the information, by November 2010, Defendant had lured away from Plaintiff approximately forty-three employees from Plaintiff's Chennai, India headquarters. *Id.* at ¶¶ 37, 38. As a result of Defendant's actions, on November 16, 2010, Plaintiff's counsel sent a letter to Defendant's Chief Financial Officer in Teaneck, New Jersey requesting that Defendant cease raiding Plaintiff and purge its database of Plaintiff's confidential information. *Id.* at ¶ 41. Notwithstanding this letter, in January 2011, Defendant lured away eight more of Plaintiff's employees. *Id.* at ¶ 42.[2]

## II. **DISCUSSION**

In order to have standing, a party must meet the requirements of Article III. *Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335 (1990). Article III requires that (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct

---

[2] In its moving papers, Defendant claims that Arun and all of the employees referenced in Plaintiff" Complaint were never employed by Plaintiff, but rather were employed by Lason.

3

complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). In addition, the Court will exercise jurisdiction under Article III only if the plaintiff asserts its own rights and interests as opposed to those of a third party. *Franchise Tax Bd. of Calif.,* 493 U.S. at 335.

Defendant argues that Plaintiff lacks standing to institute this action because it has not suffered a direct harm and because Defendant's alleged tortious conduct was not directed at Plaintiff, but rather at Plaintiff's subsidiary, Lason. Defendant argues that all of the factual allegations in the Complaint involve conduct that allegedly occurred against Lason only. Specifically, Defendant argues that (1) Arun, the principal employee Plaintiff alleges participated in the tortious activity, was employed directly by Lason, and not by Plaintiff; (2) Arun signed a non-disclosure agreement with Lason's predecessor, and not with Plaintiff; (3) all of the employees Plaintiff alleges were stolen were employed by Lason, and not by Plaintiff; and (4) the confidential and proprietary information Plaintiff alleges was stolen was the property of Lason, and not of Plaintiff.

Plaintiff, on the other hand, argues that Defendant aimed its tortious conduct directly at Plaintiff and that Plaintiff – not Lason – was injured as a result thereof. In its Complaint, Plaintiff alleges that Defendant, using Arun, a former Plaintiff employee, unlawfully targeted and lured away over fifty Plaintiff employees and stole Plaintiff's confidential and proprietary information from Plaintiff's computers.

Plaintiff specifically alleges that Defendant "instituted a clandestine operation to raid HOV's employee base in an effort to cripple HOV's status as a direct competitor and unfairly compete with HOV for the same client contracts." (Compl.,¶ 20, ECF No. 1). Plaintiff also

alleges that (1) Arun is "a former member of HOV's management group", not Lason's management group (*Id.* at ¶ 10); (2) "[t]o protect HOV's confidential business information, HOV required Arun . . . to sign a Non-Disclosure, Proprietary and Confidential Information and Inventions Policy" (*Id.* at ¶23); (3) through, Arun, Defendant "successfully targeted and hired approximately 17 senior-level employees from HOV" by December 2008, and "lured away an additional 21 employees from HOV" in 2009 (*Id.* at ¶¶ 27, 28) ; (4) "[t]hrough November 2010; and acting through Arun and other former HOV employees, Defendant [ ] approached and successfully lured away 43 employees, most of whom were senior-level employees, from HOV's Chennai, headquarters" (*Id.* at ¶ 38); (5) in early 2011, Defendant hired "at least eight (8) more HOV employees" (*Id.* at ¶ 42); (6) Defendant directed "then-current HOV employees to transfer, through HOV's email system, to Defendant vital confidential and proprietary information concerning 450 HOV employees . . ." that was owned by HOV (*Id.* at ¶ 32); and (7) the "HOV Employee Data is maintained exclusively on HOV's computer systems." (*Id.* at ¶ 33).

To have standing, the plaintiff must have suffered a direct injury from the defendant's conduct, and not merely ancillary harm as a result of an offense committed against another entity. *Tullett Prebon, PLC v. BGC Partners, Inc.*, No. 09-5365, 2010 WL 2545178, at * 4 (D.N.J. Jun. 18, 2010). "The injury for which recovery is sought must have occurred personally to the plaintiff." *Id.*   Accordingly, a parent company does not have standing to bring suit for an injury suffered by its subsidiary if the parent itself has not suffered a direct harm. *Id.*

Although Defendant argues that Plaintiff did not suffer any direct harm and is merely asserting Lason's claims as Lason's parent, Plaintiff's Complaint alleges otherwise. The Court "must accept as true all material allegations of the complaint" when deciding a motion to dismiss for lack of standing. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Here, however, since there are

5

significant material facts in dispute, the Court requires further development of the facts to resolve whether Plaintiff has standing. Accordingly, limited discovery regarding whether Plaintiff was the target of Defendant's alleged tortious conduct and whether Plaintiff suffered an actual and direct harm as a result thereof is warranted. Specifically, discovery will allow the Court to ascertain, among other things, whether (1) Arun and the other individuals referenced in the Complaint were Plaintiff's and/or Lason's employees; (2) the confidential information Defendants allegedly stole was Plaintiff's and/or Lason's property; (3) the confidential information was allegedly stolen from Plaintiff's and/or Lason's computers; and (4) Defendant directed the alleged tortious conduct from its New Jersey headquarters.

### III.   CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the Court deny without prejudice Defendant's motion to dismiss pending discovery regarding Plaintiff's standing.[3] Within thirty days, the parties shall submit a proposed limited discovery plan limited to the issue of Plaintiff's standing.

_____  10/27/11
JOSEPH A. DICKSON, U.S.M.J.

cc.   Hon. Claire C. Cecchi, U.S.D.J.

---

[3] Upon completion of the limited discovery, Defendant may re-file its motion to dismiss. At that time, the Court will also address Defendant's request for dismissal pursuant to 12(b)(6) and on forum non conveniens grounds.